UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TYREE DUANE HARRIS,

               Petitioner,

    v.                                     Case No. 3:09-cv-1190 -ST

BRIAN BELLEQUE,                     FINDINGS AND
                                             RECOMMENDATION

               Respondent.

STEWART, Magistrate Judge:

## INTRODUCTION

Petitioner, Tyree Duane Harris, brings this habeas corpus case pursuant to 28 USC § 2254 challenging the legality of his state court sentence enhancements. For the reasons that follow, the court should GRANT relief on the Amended Petition (docket #33) and remand for resentencing.

## BACKGROUND

In 1995, a Multnomah County Grand Jury charged petitioner by indictment with one count of Racketeering (Count 1), three counts of Felon in Possession of a Firearm (Counts 2, 4, and 5), two counts of Unlawful Use of a Weapon (Counts 3 and 8), one count of Assault in the First Degree (Count 6), and one count of Attempted Murder (Count 7). Respondent's Exhibit 102. The trial court granted the State's motion to dismiss one of the Unlawful Use of a Weapon

counts (Count 3), and a jury found petitioner guilty on all remaining counts.  Respondent's

Exhibit 101.

At the original sentencing hearing in January 1996, the trial court imposed upward-

departure sentences and found petitioner to be a dangerous offender under Oregon law, ORS

161.725.  *Id*.  The trial court sentenced petitioner to 396 months on the Racketeering conviction.

*Id*.  It imposed upward departures[1] on all remaining counts and sentenced petitioner to a series of

determinate sentences totaling 238 months consecutive to each other, but concurrent with the

Racketeering sentence.  *Id*.  It also imposed a 30-year dangerous offender sentence on Count 6

(Assault in the First Degree) which merged with Count 7 (Attempted Murder) for sentencing

purposes, requiring a 130-month mandatory minimum term on that count.  The 130-month

mandatory minimum reflects twice the maximum presumptive term for Assault in the First

Degree without any upward departure.  Tr., Part B, Vol. 7, p. 1383; ORS 161.737(2).

Prior to petitioner's initial sentencing, the trial court ordered a Pre-Sentence Investigation

Report ("PSI") (docket # 39).  *See* Tr., Part B, Vol. 7, p. 1380.  The PSI included a psychological

evaluation by Dr. Frank P. Colistro.  PSI, p. 13.  Among other things, it recommended that

petitioner be sentenced to 30 years in prison as a dangerous offender.  *Id* at 18.  At the hearing,

petitioner did not seek to cross-examine Dr. Colistro or challenge any of the State's evidence

concerning the findings necessary to impose a dangerous offender sentence.  Respondent's Brief

on the Merits of Petitioner's Ground One (docket #74), p. 3.  After analyzing all three

---

[1] The court imposed the upward departures on the basis of the following aggravating factors:  (1) crime was
committed while defendant on supervision (Counts 2, 4, 5, and 6); (2) defendant's persistent involvement in similar
offenses (Counts 2, 4, 5, and 6); (3) serious injury to the victim leading to disability (Count 6); (4) crime impact
greater than normal for this type of crime (Counts 1, 2, 4, 5, and 6); (5) defendant's involvement with the group
committing crime (Count 2); (6) defendant's willingness to commit additional violations of the law (Count 8);
(7) injury to the victim (Count 8); (8) defendant's participation as the acknowledged leader of the Bloods gang
(Count 1); and (9) defendant's pattern of racketeering activity included threatening and bribing witnesses (Count 1).
Tr., Part B, Vol. 7, pp. 1392-95, 1398-1400; Respondent's Exhibit 101.  Only the first three aggravating factors were
recommended by the presentence report.  PSI, p. 17.

subsections of ORS 161.725, the trial court concluded that petitioner was a dangerous offender under each of the subsections. Tr., Part B, Vol. 7, pp. 1400-02.

Petitioner filed a direct appeal, raising several challenges to his Racketeering conviction. Respondent's Exhibit 108. On February 25, 1998, the Oregon Court of Appeals remanded the case with instructions to grant petitioner's demurrer on the Racketeering charge, but otherwise affirmed the trial court's judgment. Respondent's Exhibit 110. The State moved for reconsideration based on a recent Oregon Supreme Court opinion. Respondent's Exhibit 111. On November 4, 1998, the Oregon Court of Appeals vacated its previous decision, reversed the Racketeering conviction, and remanded the case to the trial court for resentencing. Respondent's Exhibit 112.

At the resentencing on May 3, 1999, the trial court dismissed the Racketeering conviction and vacated the 396-month sentence on that count. Respondent's Exhibit 101. Petitioner did not present any additional argument regarding the imposition of a dangerous offender sentence. Tr., Part C, Vol. V, pp. 8-10, 14-15. The trial court made no new findings of fact regarding petitioner's status as a dangerous offender or any of the aggravating factors found at the original 1996 sentencing hearing. *Id* at 11-13. In its Amended Judgment of Conviction and Sentence ("Amended Sentence"), the trial court dismissed the Racketeering count and reimposed the original sentence on the remaining convictions. Respondent's Exhibit 101.

On June 21, 1999, petitioner filed his second direct appeal. On June 26, 2000, while the appeal was still pending, the United States Supreme Court announced its decision in *Apprendi v. New Jersey*, 530 US 466, 490 (2000), holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In his Appellant's Brief, filed after

*Apprendi* was issued, petitioner included a claim that his dangerous offender sentence was improperly imposed under *Apprendi*. Respondent's Exhibit 117, p. 23. In response, the State contended that petitioner did not preserve his *Apprendi* claim because he made no corresponding objection at trial and the "plain error" exception to Oregon's general preservation rule was not applicable. Respondent's Exhibit 118, pp. 16-17. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review on July 23, 2002. *State v. Harris*, 179 Or App 742, 42 P3d 950, *rev denied*, 334 Or 411, 52 P3d 436 (2002).

On October 14, 2002, petitioner filed for post-conviction relief ("PCR") in state court and asserted claims for ineffective assistance of trial counsel and trial court error pertaining to the imposition of his dangerous offender and upward-departure sentences. Respondent's Exhibit 122. Specifically with respect to his claims for trial court error, petitioner expanded on his *Apprendi* claim in the wake of *Blakely v. Washington*, 542 US 296, 303 (2004), which held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (citation omitted) (emphasis in original). The PCR trial court denied his claims for ineffective assistance of counsel on the merits and concluded that his claims of trial error were barred because state law, as established by *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994), *Lerch v. Cupp*, 9 Or App 508, 497 P2d 379 (1972), and *Hunter v. Maass*, 106 Or App 438, 808 P2d 723 (1991), generally forbids a petitioner from raising a claim in a state PCR proceeding that he could have raised during direct review. Respondent's Exhibit 143, p. 8.

Petitioner appealed that ruling, asserting that his claims were not barred by *Palmer* and that the PCR trial court erred when it declined to apply *Apprendi* and *Blakely* to his dangerous offender and upward-departure sentences. On April 8, 2009, the Oregon Court of Appeals held

that neither *Apprendi* nor *Blakely* could be applied retroactively in a PCR action and that trial

counsel's failure to anticipate *Apprendi* did not constitute inadequate assistance of counsel.

*Harris v. Hill*, 227 Or App 346, 349, 206 P3d 218, 219 (2009).  The Oregon Supreme Court

denied petitioner's subsequent petition for review.  *Id*, 346 Or 361, 211 P3d 930.

On April 21, 2011, petitioner filed an Amended Petition for Writ of Habeas Corpus,

alleging two grounds for relief:

> 1.    Petitioner was given an upward departure indeterminate
>       sentence of thirty years (with 130 months mandatory
>       incarceration) as a Dangerous Offender for Assault in the
>       First Degree where the statutory maximum sentence for
>       that offense was 65 months.  Because this was done on
>       facts found by the sentencing judge, not pleaded and
>       proven to a jury beyond a reasonable doubt, this violated
>       petitioner's Sixth and Fourteenth Amendment rights
>       pursuant to *Apprendi* and *Blakely*; and
>
> 2.    Petitioner was given upward departure sentences of twice
>       the statutory maximum on his three convictions for Felon
>       in Possession of a Firearm (Counts 2, 4, and 5) and his
>       conviction for Unlawful Use of a Weapon (Count 8) based
>       on aggravating factors found by the sentencing judge,
>       not pleaded and proven to a jury beyond a reasonable doubt.
>       This violated petitioner's Sixth and Fourteenth Amendment
>       rights pursuant to *Apprendi* and *Blakely*.

Respondent filed an Answer (docket # 8) raising the affirmative defense of procedural

default based on petitioner's failure to present his *Apprendi* and *Blakely* claims to the Oregon

state courts.  On December 9, 2011, this court issued a Findings and Recommendation (docket

#50), recommending that the court decline to deny petitioner habeas relief on the basis of

procedural default as to his claims predicated on *Apprendi*.  On April 3, 2012, Judge Brown

issued an Order (docket #64) adopting the Findings and Recommendation and directing the

parties to brief the merits of petitioner's *Apprendi* claims.  On July 16, 2012, respondent filed a

motion for reconsideration on the grounds that the Ninth Circuit's May 24, 2012 decision in

*Nitschke v. Belleque*, 680 F3d 1105 (9th Cir 2012), constituted an intervening change in the law.
On October 24, 2012, Judge Brown granted the motion to reconsider and issued an Opinion and
Order (docket #81) adhering to her prior ruling.

## FINDINGS

It is well-settled that since *Apprendi* if a trial court imposes a sentence enhancement
under Oregon's dangerous offender statute, it must do so on the basis of facts found by a jury or
admitted by the defendant. *State v. Warren*, 195 Or App 656, 667-68, 98 P3d 1129, 1135 (2004),
*rev denied*, 340 OR 201, 131 P3d 195 (2006), citing *Apprendi*, 530 US at 491-97. Respondent
concedes that the trial court erred when it sentenced petitioner as a dangerous offender based
only on judicial fact-finding, but argues that this error was harmless.

To obtain habeas relief based on trial error, the petitioner must establish that the
constitutional error was not harmless. The test for harmless error is "whether the error had a
'substantial and injurious effect or influence." *Brecht v. Abrahamson*, 507 US 619, 637-38
(1993), quoting *Kotteakos v. United States*, 328 US 750, 776 (1946); *see also Washington v.
Recuenco*, 548 US 212, 218-20 (2006) (applying harmless error analysis to *Apprendi* violation);
*Bains v. Cambra*, 204 F3d 964, 977 (9th Cir 2000) (holding that *Brecht* harmless error standard
applies in all federal habeas corpus cases under § 2254). A court must grant habeas relief where
it is "in grave doubt that a jury would have found the relevant aggravating factor beyond a
reasonable doubt. Grave doubt exists when the matter is so evenly balanced [the court is] 'in
virtual equipoise' as to the harmlessness of the error." *Estrella v. Ollison*, 668 F3d 593, 598 (9th
Cir 2011), citing *Butler v. Curry*, 528 F3d 624, 648 (9th Cir 2008). In conducting a harmless
error analysis, the court may consider the whole record, including evidence presented at

sentencing proceedings, but may not consider new admissions made at sentencing. *Butler*, 528 F3d at 648.

Under Oregon law, in order to impose a dangerous offender designation, the factfinder must make several "careful and complete findings." *State v. Huntley*, 302 Or 418, 437, 730 P2d 1234, 1245 (1986). First, the factfinder must conclude that "because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public." ORS 161.725(a). The Oregon Supreme Court has stated that this inquiry involves two steps since in order to "make the first finding of dangerousness, the [fact-finder] must find the defendant has engaged in dangerous behavior that involves a crime of violence against a person." *Huntley*, 302 Or at 429, 730 P2d at 1240. The second step, which considers whether extended confinement is necessary to protect the public, " implies a prediction . . . that the defendant is likely to engage in dangerous behavior and constitutes a future threat of injury or death to other persons," an inquiry which "overlaps to some extent the . . . finding . . . that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity." *Id*, 302 Or at 429, 730 P2d at 1241.

Next, the offense for which the defendant is being sentenced must be either a Class A felony or a felony "that seriously endangered the life or safety of another." ORS 161.725(1)(a)- (c). If the defendant is being sentenced on a felony "that seriously endangered the life of safety or another," then he must also have "been previously convicted of a felony not related to the instant crime as a single criminal episode," ORS 161.725(1)(b), or "previously engaged in unlawful conduct not related to the instant crime as a single criminal episode that seriously endangered the life or safety of another," ORS 161.725(1)(c).

Finally, the factfinder must conclude that the defendant "is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."  ORS 161.725(1)(a)-(c).  This is the key issue and requires the factfinder to determine that the defendant is "suffering from a severe mental or emotional disorder indicating a propensity toward continuing *dangerous* criminal activity," as opposed to merely habitual, but not dangerous, criminal activity.  *Huntley*, 302 Or at 430, 730 P2d at 1241 (emphasis in original). Additionally, "the statute contemplates a severe personality disorder.  The statute refers to a mentally abnormal person and not to a dangerous normal person[,]" and should be made based on the "evaluation of all the information gathered, not exclusively on the clinical diagnosis." *Id*. The factfinder must make this determination based "upon consideration of not only the psychiatric report but also the presentence report and the evidence in the case or that presented at a presentence hearing." *Id*, 302 Or at 428, 730 P2d at 1240.  Notably, while the psychiatric report is important and "must be considered," there are "no words in the statute that require that a psychiatrist make the findings of dangerousness or 'severe personality disorder.'" *Id*.

During both sentencing proceedings, the trial court relied upon the PSI dated December 21, 1995, which included Dr. Colistro's psychological evaluation.  At the first hearing, the trial court concluded that petitioner met the first factor, "dangerousness of the defendant and the extended period of correctional treatment," for three reasons:  (1) the current Attempted Murder conviction; (2) a previous Attempted Murder charge ("though [the juvenile court judge] found him not guilty,. . . in all probability, Mr. Harris was responsible for [it]"); and (3) "a number of other charges [for] which Mr. Harris carried a firearm and situations where it showed the intent to use that firearm."  Tr., Part B, Vol. 7, pp. 1401.

As for the second factor relating to the nature of the charges, the trial court concluded that petitioner satisfied all three categories of offenses. He was being sentenced for a Class A felony, thereby satisfying ORS 161.725(1)(a). *Id.* He also satisfied ORS 161.725(1)(b) because he was being sentenced "for a felony that seriously endangered the life and safety of another" due to the Attempted Murder and Assault and the First Degree convictions and he had "been previously convicted of a felony not related to the incident crime, as a single criminal episode," but without specifying that previous unrelated felony conviction. *Id.* Finally, the trial court concluded that petitioner satisfied ORS 161.725(1)(c) since he was being "sentenced for a felony that seriously endangered the life or safety of another, that being Attempted Murder and Assault in the First Degree" and had "previously engaged in unlawful conduct not related to the instant crime as a single criminal episode and seriously endangered the life or safety of another," although again without specifying the unrelated unlawful conduct. *Id* at 1402.

Finally, with regard to the final and most important factor, the trial court stated that in connection with ORS 161.725(1)(a), "there has been the psychological finding that Mr. Harris is suffering from a severe personality disorder, indicating a propensity toward crimes that seriously endanger the lives or safety of another and that was Dr. Calistro's [*sic*] finding, as reflected in the presentence report which the Court adopts." *Id* at 1401. The judge went on to restate this same language two more times, in order to support his conclusion that petitioner also met the standards for ORS 161.725(1)(b) and (c). *Id* at 1401-02.

The trial court made the findings necessary for imposing the dangerous offender statute based on the information that came to light during trial, as well as on information contained in the PSI which related petitioner's lengthy criminal history and Dr. Colistro's conclusion that petitioner suffered from an Antisocial Personality Disorder. PSI, p. 15. Dr. Colistro

characterized petitioner's criminal history as "assaultive" which "demonstrates [a] lack of responsiveness to alter his antisocial values and conduct" and noted that petitioner "has continued to behave in a significantly aggressive fashion in spite of corrective attempts to alter his behavior, both in the community and while in prison." *Id*. Based on this record, Dr. Colistro concluded that petitioner "possess[es] a serious personality disorder which results in a high propensity toward engaging in crimes that endanger the life or safety of others." *Id*. Finally, Dr. Colistro concluded that "the overall impression emerging from this multi-year pattern of unalterable antisocial conduct is that Mr. Harris has remained committed to a criminal lifestyle and values which drive him to act out aggressively without experiencing any significant degrees of guilt or remorse." *Id*. The fact that Dr. Colistro's conclusion, which the trial court adopted without modification, did not directly track the language of the statute, does not, without more, amount to error that justifies habeas relief. *See Huntley*, 302 Or at 428, 730 P2d at 1240 (noting that there are "no words in the statute that require that a psychiatrist make the findings of dangerousness or 'severe personality disorder.'").

The trial court's findings required to impose the dangerous offender sentence would be sufficient but for *Apprendi* which requires such a finding be made by facts found by a jury, not by the trial judge. In 2004, the Oregon Court of Appeals first applied *Apprendi* to Oregon's dangerous offender statute, concluding that imposition of a 30-year dangerous offender sentence, when based on the trial court's findings and not on facts found by a jury, violated the defendant's constitutional rights. *Warren*, 195 Or App at 670, 98 P3d at 1137. In so finding, the court noted that the "United States Supreme Court has not, however, considered the application of the principles announced in *Apprendi*, and clarified in *Blakely*, to a scheme similar to Oregon's dangerous offender sentencing scheme, nor have the appellate courts of this state rendered a

controlling decision on the question." *Id*, 195 Or App at 666, 98 P3d at 1135.   The Oregon

Court of Appeals has since noted that:

> The determination of an offender's "dangerousness" is inherently
> qualitative.  Rather than being a sentencing fact capable of
> conclusive establishment by facts adduced at trial, such as a
> victim's permanent injury or the presence of multiple victims, a
> dangerous offender sentence rests on the factfinder's synthesis of
> the characteristics of the offender *and* the determination that those
> characteristics warrant an extended period of incarceration.  Unlike
> the sentencing fact at issue in *Ramirez* – the victim's loss of an eye
> constituting permanent injury – we cannot conclude that there is no
> "legitimate debate" that a jury would have found defendant to be a
> "dangerous offender."

*State v. Shelters*, 225 Or App 76, 80, 200 P3d 598, 600 (2009), citing *State v. Ramirez*, 343 Or

505, 513-14, 173 P3d 817, 821-22 (2007) (emphasis in original).

Since *Shelters*, the Oregon courts have consistently remanded for resentencing to correct

*Apprendi* errors related to the imposition of a dangerous offender statute.  *See e.g.*, *State v.

Sanders*, 229 Or App 238, 242, 212 P3d 512, 513 (2009) (noting that the court has the discretion

to remand to correct the sentencing error when there is "no legitimate debate" that the jury would

have found the departure factors relied on by the trial court, but concluding that based on the

reasoning articulated in *Shelters*, remand for resentencing was appropriate); *State v. Thomas*, 225

Or App 199, 200, 200 P3d 611, 612 (2009) (same).

This case has a somewhat unique procedural posture, given that when the sentences were

imposed, *Apprendi* was not yet decided, thus permitting the trial judge to find the facts necessary

for the imposition of the dangerous offender sentence.  This court has been unable to find any

cases from this district or from the Ninth Circuit that analyze harmless error in the context of

Oregon's dangerous offender sentencing scheme, since nearly all of the other federal cases

alleging an *Apprendi* error on the basis of ORS 161.725 never reach the merits due to procedural

default.  *See e.g.*, *Nitschke*, 680 F3d at 1111-12.  Here, petitioner's *Apprendi* claims are not

procedurally defaulted.  Moreover, the cases cited by respondent are not helpful.  None of them concern dangerous offender sentences imposed pursuant to ORS 161.725, and each of them turns on the resolution of straightforward factual findings in contrast to the dangerous offender inquiry which requires a more nuanced analysis.  *See Shelters*, 225 Or App at 80, 200 P3d at 600 (2009) (distinguishing the sentence enhancement in *Ramirez,* which required that a particular fact be present in order to impose an enhanced sentence, from the "dangerousness" inquiry required by ORS 161.725).

It is well-established under Oregon law that the imposition of a dangerous offender sentence requires a multi-step inquiry; the factfinder must make a "qualitative" inquiry that requires "synthesis of the characteristics of the offender *and* the determination that those characteristics warrant an extended period of incarceration."  *Id* (emphasis in original).  Since *Apprendi* requires that this inquiry be made by the jury and not the trial court, the failure to submit this inquiry to the jury had, as a matter of law, a "substantial and injurious effect or influence" on petitioner's sentence.  *Brecht*, 507 US at 637-68.  Because this error was not harmless, petitioner should be granted habeas relief, and this case should be remanded to the state court for resentencing.

Respondent urges this court to issue a conditional writ, vacating only the dangerous offender sentence on Count 6, but cites no authority for such a limitation.  Such a limitation is not permitted under Oregon law which requires that where, as here, the sentencing court "committed an error that requires resentencing, the . . . court *shall* remand the entire case for resentencing." ORS 138.222(5).  Consequently, the entire case should be remanded for resentencing.

///

12 – FINDINGS AND RECOMMENDATION

## RECOMMENDATION

For the reasons discussed above, petitioner's Amended Petition (docket #33) for habeas relief should be GRANTED, and the case remanded to the State of Oregon for resentencing, with an instruction that petitioner's dangerous offender sentence on Count 6 is vacated unless the State resentences petitioner as a dangerous offender within 90 days.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, April 01, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  March 15, 2013.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge